Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address

WINTERBOTHAM PARHAM TEEPLE, A PC
MICHAEL SMITH (CBN#259267)
4371 LATHAM STREET, SUITE 105
RIVERSIDE, CALIFORNIA 92501
(951) 686-7717
(951) 686-2536 FAX

FOR COURT USE ONLY

☑ *Attorney for Debtor(s)*
☐ *Debtor(s) appearing without an attorney*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA –RIVERSIDE_____ ☑DIVISION**

| | |
|---|---|
| In re:<br><br>Sheila H Ackerson<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 6:10-bk-46364-MJ<br><br>CHAPTER: 13<br><br>**DEBTOR'S NOTICE OF MOTION AND MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506(d)]**<br><br>DATE: 1/27/2014<br>TIME:  1:30 pm<br>COURTROOM: 301<br>FLOOR: 3rd |

1. TO: The Hon. Meredith Jury, U.S. Bankruptcy Judge, and PNC BANK, N.A.

2. NOTICE IS HEREBY GIVEN that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief set forth in the Motion and accompanying supporting documents served and filed herewith.

3. Hearing Location:
   ☐ 255 East Temple Street, Los Angeles      ☐ 411 West Fourth Street, Santa Ana
   ☐ 21041 Burbank Boulevard, Woodland Hills  ☐ 1415 State Street, Santa Barbara
   ☑ 3420 Twelfth Street, Riverside

4. **Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one. (*If you do not have an attorney, you may wish to consult one.*)

5. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than 14 days prior to the above hearing date. If you fail to file

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2011                                     Page 1                                     **F 4003-2.4.MOTION**

a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

6. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according the judge's self-calendaring procedures.

Date: 1/2/2014

Winterbotham, Parham, Teeple, A PC
Printed name of law firm (if applicable)

Michael Smith
Printed Name of Individual Debtor
or Attorney for Debtor

Signature of Individual Debtor
or Attorney for Debtor

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2011                                          Page 2                                   **F 4003-2.4.MOTION**

**MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506(d)]**
**(DEBTOR: ACKERSON                                    )**

**NAME OF CREDITOR HOLDING JUNIOR LIEN (Respondent): PNC BANK, N.A.**

1. **Property at Issue:** Debtor moves to avoid the junior deed of trust, mortgage or other encumbrance (Lien) encumbering the following real property (Property), which is the principal residence of debtor.

   Street address:          7468 Addison Road

   Unit number:

   City, state, zip code:    Rancho Cucamonga, CA 91730

   Legal description of Property or document recording number (*including county of recording*):

   County of San Bernardino, Lot:018, Tract:13304

   ☐ See attached page for legal description of Property or document recording number.

2. **Case History:**

   a.  A voluntary petition under chapter ☐ 7 ☐ 11 ☐ 12 ☑ 13 was filed on (*specify petition date*): 11/9/2010               .

   b.  ☐ An Order of Conversion to chapter 13 was entered on (*specify date*): _____.

3. **Grounds for Avoidance of Junior Lien:**

   a.  As of (*date of title review*) 11/9/2010              , the Property is subject to the following liens in the amounts specified securing the debt against the Property that the debtor seeks to have treated as indicated:

      (1) (*Name of holder of 1st lien*) America's Servicing Company (Wells Fargo Bank, N.A.) in the amount of $ 441,365.40               .

      (2) (*Name of holder of 2nd lien*) PNC Bank, N.A.                          in the amount of $ 53,689.00               ☑ is ☐ is not  to be avoided;

      (3) (*Name of holder of 3rd lien*) _____          in the amount of $ _____ ☐ is ☐ is not  to be avoided;

      ☐ See attached page for additional lien(s).

      As of (*date of valuation/appraisal*) 10/6/2010             , Property is worth no more than (*value per valuation/appraisal*) $ 340,000.00              .

   b.  As a result, each Respondent's Lien encumbering the Property is wholly unsecured.

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2011                          Page 3                          **F 4003-2.4.MOTION**

c. **Evidence in Support of Motion:**

(1) ☑ The amount of the lien identified in paragraph 3(a)(1) is based on (*type of evidence*)
Mortgage Statement_____, attached hereto and identified as Exhibit _1_ .

(2) ☑ The amount of the lien identified in paragraph 3(a)(2) is based on (*type of evidence*)
Proof of Claim_____, attached hereto and identified as Exhibit _2_ .

(3) ☐ The amount of the lien identified in paragraph 3(a)(3) is based on (*type of evidence*)
_____, attached hereto and identified as Exhibit ___ .

(4) ☐ The relative priority of the liens encumbering the Property is established by evidence attached as
Exhibit ___.

(5) ☑ The value of the Property from paragraph 3(b) is based on (*type of evidence*)
_Appraisal_____, attached as Exhibit _3_ .

(6) ☑ Debtor submits the attached Declaration(s).

(7) ☑ Other evidence (*specify/identify supplemental evidence*): Appraiser's Declaration (Exhibit 4)_____
Debtor's Declaration_____, attached as Exhibit _5_ .

d. **WHEREFORE, Debtor prays that this Court issue an Order granting this Motion and establishing
that:**

(1) The Property is valued at no more than (*requested value*) $ 260,000.00_____.

(2) No payments are to be made on the secured claim of the Respondent, and regular mortgage maintenance
payments are not to be made, before the Debtor's ☑ completion of the chapter 13 plan, or ☑ receipt of a
chapter 13 discharge.

(3) Respondent's(s') claim on the junior position lien(s) shall be allowed as a nonpriority general unsecured
claim(s) in the amount per filed Proof of Claim.

(4) The avoidance of the Respondent's(s') junior lien(s) is contingent upon:  Debtor's ☑ completion of the
chapter 13 plan, or ☑ receipt of a chapter 13 discharge.

(5) The Respondents shall retain its/their lien(s) in the junior position for the full amount due under the
corresponding note and lien in the event of either the dismissal of the Debtor's chapter 13 case, the
conversion of the Debtor's chapter 13 case to any other chapter under the United States Bankruptcy Code, or
if the Property is sold or refinanced prior to the Debtor's ☑ completion of the chapter 13 plan or ☑ receipt of
a chapter 13 discharge.

(6) In the event that the holder of the first position lien or any senior lien on the Property forecloses on its interest
and extinguishes the Respondent's(s') lien rights prior to the Debtor's completion of the chapter 13 plan and
receipt of a chapter 13 discharge, the Respondent's(s') lien(s) shall attach to the proceeds greater than
necessary to pay the senior lien, if any, from the foreclosure sale, subject to the priority of any such junior
lien(s).

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2011                                    Page 4                              **F 4003-2.4.MOTION**

e.    ☐  See attached continuation page for additional provisions.

Date: 1/2/2014

Respectfully submitted,

By: _____
     Signature of Debtor or Attorney for Debtor

Name: Michael Smith
     Printed Name of Debtor or Attorney for Debtor

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2011                                            Page 5                                   F 4003-2.4.MOTION

# EXHIBIT "1"

**ASC**
AMERICA'S SERVICING COMPANY
Return Mail Only
PO Box 10388
Des Moines, IA 50306-0388

## Monthly Mortgage Statement

Statement Date    08/10/10
Loan Number    **1158067318**

### Customer Service

**Online**
mortgageaccountonline.com

**Fax**
(866) 453-6315

**Telephone**
(800) 842-7654

**Correspondence**
PO Box 10328
Des Moines IA 50306

**Hours of Operation**
Mon - Fri 8 AM - 6 PM

**Payments**
PO Box 60768
Los Angeles CA 90060

---

1AT        1654/009654/003307 033 01 ACNK5J 106 020
SHEILA H ACKERSON
7468 ADDISON RD
RANCHO CUCAMONGA CA 91730-7232

## Summary

| | |
|---|---|
| Payment (Principal and/or Interest, Escrow) | $2,462.76 |
| Optional Product(s) | $0.00 |
| **Current Monthly Payment 09/01/10** | **$2,462.76** |
| Overdue Payments | |
| Unpaid Late Charge(s) | $0.00 |
| Other Charges | $0.00 |
| **TOTAL PAYMENT DUE 09/01/10** | **$2,462.76** |

**Property Address**
7468 ADDISON RD
RANCHO CUCAMONGA CA 91730

Unpaid Principal Balance    $441,365.40
*(Contact Customer Service for your payoff balance)*

Interest Rate    3.375%
Interest Paid Year-to-Date    $6,242.08
Taxes Paid Year-to-Date    $8,935.86
Escrow Balance    $1,907.12

### Important Messages

Our records indicate your loan has outstanding charges in the amount of $1,901.35 from a previous delinquency. Please call us at the Customer Service phone number listed above to make payment arrangements.

## Activity Since Your Last Statement

| Date | Description | Total | Principal | Interest | Escrow | Late Charge | Other |
|---|---|---|---|---|---|---|---|
| 08/10 | PAYMENT | $2,462.76 | $841.89 | $1,243.71 | $377.16 | | |

---

**ASC**
AMERICA'S SERVICING COMPANY

*Please detach and return with your payment*

009654/003307 ACNK5J 1654 ETM1C002 1

| Loan Number | 1158067318 |
|---|---|
| Current Monthly Payment Due | $2,462.76 |
| Total Payment Due 09/01/10 | $2,462.76 |
| After 09/16/10 Add Late Fee | $104.28 |
| Total Amount Due After 09/16/10 | $2,567.04 |

Check here and see reverse for address correction.

SHEILA H ACKERSON

1654/009654/003307 033 01 ACNK5J 106 020



AMERICA'S SERVICING CO.
PO BOX 60768
LOS ANGELES CA 90060-0768

106 1158067318 0 100002462760256704024627600000000

# EXHIBIT "2"

| UNITED STATES BANKRUPTCY COURT  CENTRAL DISTRICT OF CALIFORNIA | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor: Debtor 1  Sheila H Ackerson<br>Debtor 2<br>Debtor 3<br>Debtor 4 | Case Number:<br>10-46364 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>PNC Bank | ☐ Check this box to indicate that this claim amends a previously field claim |
|---|---|
| Name and address where notices should be sent:<br>PNC Bank<br>P O BOX 94982<br>Cleveland, OH 44101<br>Telephone No. 866-622-2657 | Court Claim Number: _____<br>(If known)<br><br>Filed on:  N/A |
| Name and address where payment should be sent (if different from above):<br><br><br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:**  $53,689.00<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C 507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim. |
| **2. Basis for Claim:**  Money Loaned<br>(See instruction #2 on reverse side.) | ☐ Domestic support obligations under 11 U.S.C. 507(a)(1)(A) or (a)(1)(B). |
| **3. Last four digits of any number by which creditor identifies debtor:** xx-xx-xxxxxxxx7747<br><br>3a. Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. 507(a)(4). |
| **4. Secured Claim:**  (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:**  ☒ Real Estate   ☐ Motor Vehicle   ☐ Other<br>Describe:  7468 Addison Road<br>Rancho Cucamonga, CA 91730<br><br>**Value of Property:**  $0.00          **Annual Interest Rate**  0.00  %<br><br>Amount of arrearage and other charges as of time case filed included in secured claim, if any:  $0.00          Basis for perfection:  Note and Mortgage<br><br>**Amount of Secured Claim:** $53,689.00      **Amount Unsecured:**  $0.00 | ☐ Contributions to an employee benefit plan- 11 U.S.C. 507(a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C 507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. 507 (a)(8)<br><br>☐ Other - Specify applicable paragraph of 11 U.S.C. 507 (a)(__). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | **Amount entitled to priority:**<br>$ _____<br><br>* *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| Date:<br>November 24, 2010 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>/S/    Therese Green | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for upto 5 years, or both. 18 U.S.C. 152 and 3571*

RECORDING REQUESTED BY
FIRST AMERICAN TITLE

3304150

This document was prepared by WILLIAM
6750 Miller Road Brecksville,
Please return this document after recording to:

NCB, CLS BRECKSVILLE
DOCUMENTATION, LOCATOR 7120
6750 MILLER ROAD
BRECKSVILLE, OH 44141

3304150
————— State of California —————



Recorded in Official Records, County of San Bernardino 5/14/2007
8:00 AM

**LARRY WALKER**
Auditor/Controller – Recorder

691 First American

Doc# 2007-0290159

| Titles: | 1 | Pages: | 7 |
| --- | --- | --- | --- |
| Fees | | | 47.00 |
| Taxes | | | 0.00 |
| Other | | | 0.00 |
| PAID | | | $47.00 |

————— Space Above This Line For Recording Data —————

# DEED OF TRUST
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is May 4, 2007 ................................
The parties and their addresses are:
TRUSTOR: SHEILA H ACKERSON A Single Woman

       7468 ADDISON RD RANCHO CUCAMONGA, California 91730

☐ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgments.
TRUSTEE: National City Bank

ACKERSON
MORTGAGEDEED

XLLH13F

LENDER: NATIONAL CITY BANK

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
SEE ATTACHED EXHIBIT ''A''

The property is located in San Bernardino ....................................... at ....................................
                    (County)

7468 ADDISON RD........................ , ........RANCHO CUCAMONGA...................... , California 91730........
    (Address)                  (City)                  (ZIP Code)
Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ ........53,000.00..... This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(Include items such as borrowers' names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)*

                                        Maturity Date: 5/04/2022

**CALIFORNIA - DEED OF TRUST** (NOT FOR FNMA, FHLMC, FHA OR VA USE)
© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0605)

*(page 1 of 6)*

B. All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D. Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees:
   A. To make all payments when due and to perform or comply with all covenants.

   B. To promptly deliver to Lender any notices that Trustor receives from the holder.

   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor will keep the Property free of noxious weeds and grasses. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. Trustor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Trustor's consent. Such a change will not release Trustor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

26. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

27. **STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California.

28. **SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person or registered domestic partner expressly agrees that recourse may be had against his or her separate property.

*(page 5 of 6)*

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0605)

**29. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Trustor grants to Lender a security interest in all goods that Trustor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
☐ Condominium Rider ☐ Planned Unit Development Rider ☐ Other .............................................
☐ **Additional Terms.**

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

..........*Sheila H. Ackerson 5/7/07*..........      ...................................................
(Signature)                                   (Date)      (Signature)                            (Date)
SHEILA H ACKERSON

**ACKNOWLEDGMENT.**
(Individual) STATE OF *California* , COUNTY OF *San Bernardino* } ss.
On this *7* day of *May 2008 BL* before me *B. Lynch*
a notary public, personally appeared *Sheila H. Ackerson*
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature *B. Lynch*

Name (typed or printed)

(Seal)

My commission expires: *4-7-2011*

B. LYNCH
COMM. # 1737301
NOTARY PUBLIC CALIFORNIA
SAN BERNARDINO COUNTY
MY COMM. EXP. APR. 7, 2011

---

### REQUEST FOR FULL RECONVEYANCE

To Trustee:

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of .................................. County, State of California, in book .................... , page ............ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: ......................................................................

Assessor's Identification Number ................ - ............... - ...............

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0605)

# EXHIBIT "3"

**TITAN APPRAISALS**

File No. ACKERSONRCUC2055-1

## APPRAISAL OF



### LOCATED AT:

7468 ADDISON ROAD
RANCHO CUCAMONGA, CA 91730

### FOR:

ACKERSON
7468 ADDISON RD
RANCHO CUCAMONGA, CA 91730

### BORROWER:

ACKERSON

### AS OF:

October 6, 2010

### BY:

OMAR GUTIERREZ
STATE LICENSED REAL ESTATE APPRAISER

4724 GOLDEN RIDGE DR, CORONA, CA 92880 -- 562.522-3419

**TITAN APPRAISALS**

File No. ACKERSONRCUC2055-

October 6, 2010

ACKERSON
7468 ADDISON RD
RANCHO CUCAMONGA, CA 91730

File Number:   ACKERSONRCUC2055-10

In accordance with your request, I have appraised the real property at:

7468 ADDISON ROAD
RANCHO CUCAMONGA, CA 91730

The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved.
The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the market value of the property as of          October 6, 2010          is:

$340,000
Three Hundred Forty Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions,
final opinion of value, descriptive photographs, limiting conditions and appropriate certifications.

OMAR GUTIERREZ
STATE LICENSED REAL ESTATE APPRAISER

4724 GOLDEN RIDGE DR, CORONA, CA 92880 -- 562.522-3419

**Fannie Mae**
**Desktop Underwriter Quantitative Analysis Appraisal Report**   File No.: ACKERSONRCUC2055-

THIS SUMMARY APPRAISAL REPORT IS INTENDED FOR USE BY THE LENDER/CLIENT FOR A MORTGAGE FINANCE TRANSACTION ONLY.

| | | | | |
|---|---|---|---|---|
| Property Address | 7468 ADDISON ROAD | City RANCHO CUCAMONGA | State CA | Zip Code 91730 |
| Legal Description LOT:018, TRACT:13304 | | | County SAN BERNARDINO | |
| Assessor's Parcel No. | 0227-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 | Tax Year 2009 | R.E.Taxes $ 3792.92 | Special Assessments $ N/A |
| Borrower ACKERSON | Current Owner | ACKERSON | Occupant [X] Owner | Tenant Vacant |
| Neighborhood or Project Name N/A | | Project Type | PUD Condominium | HOA$ N/A /Mo. |
| Sales Price $ N/A | Date of Sale N/A | Description/$ amount of loan charges/concessions to be paid by seller | N/A | |
| Property rights appraised [X] Fee Simple | Leasehold | Map Reference 573-D7 | Census Tract 0020.06 | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Location | Urban | [X] Suburban | Rural | Property values | Increasing | Stable | [X] Declining | Single family housing | | Condominium housing | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Built up | [X] Over 75% | 25-75% | Under 25% | Demand/supply | Shortage | [X] In balance | Over supply | PRICE $(000) | AGE (yrs) | PRICE $(000) | AGE (yrs) |
| Growth rate | Rapid | [X] Stable | Slow | Marketing time | Under 3 mos. | [X] 3-6 mos. | Over 6 mos. | 215 Low | 8 | N/A Low N/A | |
| Neighborhood boundaries SEE ATTACHED ADDENDUM. | | | | | | | | 500 High | 35 | N/A High N/A | |
| | | | | | | | | Predominant | | Predominant | |
| | | | | | | | | 335 | 22 | N/A | N/A |

| | | | | |
|---|---|---|---|---|
| Dimensions PLEASE SEE ATTACHED PLAT MAP | | Site area 4500 SQFT. | Shape RECTANGULAR | |
| Specific zoning classification and description R1;SINGLE FAMILY RESIDENCE | | | | |
| Zoning compliance [X] Legal | Legal nonconforming (Grandfathered use); | Illegal, attach description | No zoning | |
| Highest and best use of subject property as improved (or as proposed per plans and specifications): [X] Present use | | Other use, attach description | | |
| Utilities Public Other | Public Other | Off-site Improvements Type | Public Private | |
| Electricity [X] | Water [X] | Street ASPHALT | [X] | |
| Gas [X] | Sanitary sewer [X] | Alley NONE | | |
| Are there any adverse site conditions (easements, encroachments, special assessments, slide areas, etc.)? | | Yes [X] No | If Yes, attach description. | |

| | |
|---|---|
| Source(s) used for physical characteristics of property: [X] Interior and exterior inspection   Exterior inspection from street   Previous appraisal files | |
| MLS   Assessment and tax records   Prior Inspection   Property owner   Other (Describe) NDC DATA,REALIST | |
| No. of Stories 2   Type (Det./Att.) DET   Exterior Walls STUCCO   Roof Surface C.TILE   Manufactured Housing Yes [X] No | |
| Does the property generally conform to the neighborhood (in terms of style, condition, and construction materials)? [X] Yes No If No, attach description | |
| Are there any apparent physical deficiencies or conditions that would affect the soundness or structural integrity of the improvements or the livability of the property? | |
| Yes [X] No If Yes, attach description. | |
| Are there any apparent adverse environmental conditions (hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of | |
| the subject property?   Yes [X] No If Yes, attach description. | |
| I researched the subject market area for comparable listings and sales that are the most similar and proximate to the subject property. | |
| My research revealed a total of 42   sales ranging in sales price from $ 245,000   to $ 360,000 . | |
| My research revealed a total of 8   listings ranging in list price from $ 245,000   to $ 355,000 . | |
| The analysis of the comparable sales below reflects market reaction to significant variations between the sales and the subject property. | |

| FEATURE | SUBJECT | SALE 1 | | SALE 2 | | SALE 3 | |
|---|---|---|---|---|---|---|---|
| Address | 7468 ADDISON ROAD RANCHO CUCAMONGA | 11852 MANHATTAN CT RANCHO CUCAMONGA | | 7532 SMALLWOOD PL RANCHO CUCAMONGA | | 7376 EL DORADO CT RANCHO CUCAMONGA | |
| Proximity to Subject | | 0.41 miles ESE | | 0.39 miles ESE | | 0.76 miles W | |
| Sales Price | $ N/A | $ 328,000 | | $ 333,000 | | $ 338,000 | |
| Price/Gross Liv. Area | $ 0.00 ☑ | $ 163.59 ☑ | | $ 170.25 ☑ | | $ 198.47 ☑ | |
| Data & Veril Sources | | MLS,NDC,R.LIST,PUB. RECS. | | MLS,NDC,R.LIST,PUB. RECS. | | MLS,NDC,R.LIST,PUB. RECS. | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-)$ Adjustment | DESCRIPTION | + (-)$ Adjustment | DESCRIPTION | + (-)$ Adjustment |
| Sales or Financing | | CONV. 80% | | CONV. 41% | | FHA. 99% | |
| Concessions | | DOC.# 355618 | | DOC.# 300918 | | DOC.# 383225 | |
| Date of Sale/Time | N/A | 08/31/2010 | | 07/27/2010 | | 09/17/2010 | |
| Location | SUBURBAN | SUBURBAN/SIM | | SUBURBAN/SIM | | SUBURBAN/SIM | |
| Site | 4500 SQFT. | 4400 SQFT. | | 4400 SQFT. | | 6630 SQFT. | -2,000 |
| View | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Design (Style) | CONV./AVG | CONV./SIM | | CONV./SIM | | CONV./SIM | |
| Actual Age (Yrs.) | 1989 | 1999 | | 1999 | | 1985 | |
| Condition | AVERAGE | SIMILAR | | SIMILAR | | SIMILAR | |
| Above Grade | Total 8 Bdrms 4 Baths 2.50 | Total 8 Bdrms 4 Baths 2.50 | | Total 7 Bdrms 3 Baths 2.50 | +4,000 | Total 7 Bdrms 4 Baths 2.00 | +1,500 |
| Gross Living Area | 1,925 Sq. Ft. | 2,005 Sq. Ft. | 0 | 1,956 Sq. Ft. | 0 | 1,703 Sq. Ft. | +9,000 |
| Basement and Finished | NONE | NONE | | NONE | | NONE | |
| Rooms Below Grade | DOM=N/A | DOM=173 | | DOM=4 | | DOM=10 | |
| Garage/Carport | 2-CAR GARAGE | 2-CAR GARAGE | | 2-CAR GARAGE | | 2-CAR GARAGE | |
| AMENITIES: | CVPOR,CVPAT | SIMILAR | | SIMILAR | | SUPERIOR | -3,000 |
| OTHER: | F/P,B/INS | SIMILAR | | SIMILAR | | SIMILAR | |
| Net Adj. (total) | | [X] + - $ | 0 | [X] + - $ | 4,000 | [X] + - $ | 5,500 |
| Adjusted Sales Price | | Gross: 0.0% | | Gross: 1.2% | | Gross: 4.6% | |
| of Comparables | | Net: 0.0% $ | 328,000 | Net: 1.2% $ | 337,000 | Net: 1.6% $ | 343,500 |
| Date of Prior Sales | 04/15/2005 | 04/19/2007 | | 02/03/2000 | | 05/04/2006 | |
| Price of Prior Sales | $ 479,000 | $ 532,000 | | $ 184,500 | | $ 523,000 | |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of the prior sales of subject and comparables: SEE ATTACHED

ADDENDUM.

Summary of sales comparison and value conclusion: SEE ATTACHED ADDENDUM.

| | |
|---|---|
| This appraisal is made [X] "as-is", or   subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, or | |
| subject to the following repairs, alterations or conditions: | |
| BASED ON AN   EXTERIOR INSPECTION FROM THE STREET OR AN [X] INTERIOR AND EXTERIOR INSPECTION, I ESTIMATE THE MARKET VALUE, AS DEFINED, | |
| OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT TO BE $ 340,000 , AS OF 10/06/2010 . | |

10CH.   PAGE 1 OF 3   Fannie Mae Form 2055 9-96

Produced using ACI software; 800.234.8727 www.aciweb.com

**Desktop Underwriter Quantitative Analysis Appraisal Report**

File No.: ACKERSONRCUC2055-

**Project Information for PUDs** (if applicable)--Is the developer/builder in control of the Home Owners' Association (HOA)? ☐ Yes ☐ No

Provide the following information for PUDs only if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit:

Total number of phases _____   Total number of units _____   Total number of units sold _____

Total number of units rented _____   Total number of units for sale _____   Data Source(s) _____

Was the project created by the conversion of existing buildings into a PUD? ☐ Yes ☐ No  If yes, state date of conversion: _____

Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source: _____

Are the common elements completed? ☐ Yes ☐ No If No, describe status of completion: _____

Are any common elements leased to or by the Home Owners' Association? ☐ Yes ☐ No  If yes, attach addendum describing rental terms and options.

Describe common elements and recreational facilities: _____

**Project Information for Condominiums** (if applicable)--Is the developer/builder in control of the Home Owners' Association (HOA)? ☐ Yes ☐ No

Provide the following information for all Condominium Projects:

Total number of phases _____   Total number of units _____   Total number of units sold _____

Total number of units rented _____   Total number of units for sale _____   Data Source(s) _____

Was the project created by the conversion of existing buildings into a condominium? ☐ Yes ☐ No  If yes, state date of conversion: _____

Project Type: ☐ Primary Residence ☐ Second Home or Recreational ☐ Row or Townhouse ☐ Garden ☐ Midrise ☐ Highrise ☐ _____

Condition of the project, quality of construction, unit mix, etc.: _____

Are the common elements completed? ☐ Yes ☐ No If No, describe status of completion: _____

Are any common elements leased to or by the Home Owners' Association? ☐ Yes ☐ No  If yes, attach addendum describing rental terms and options.

Describe common elements and recreational facilities: _____

**PURPOSE OF APPRAISAL:** The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report based on a quantitative sales comparison analysis for use in the mortgage finance transaction.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

* Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION**

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided any required sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

4. The appraiser has noted in the appraisal report any adverse conditions (such as, but not limited to, needed repairs, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, expressed or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

6. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

7. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the report to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

8. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

**Desktop Underwriter Quantitative Analysis Appraisal Report**   File No.: ACKERSONRCUC2055-

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I performed this appraisal by (1) personally inspecting from the street the subject property and neighborhood and each of the comparable sales (unless I have otherwise indicated in this report that I also inspected the interior of the subject property); (2) collecting, confirming, and analyzing data from reliable public and/or private sources; and (3) reporting the results of my inspection and analysis in this summary appraisal report. I further certify that I have adequate information about the physical characteristics of the subject property and the comparable sales to develop this appraisal.

2. I have researched and analyzed the comparable sales and offerings/listings in the subject market area and have reported the comparable sales in this report that are the best available for the subject property. I further certify that adequate comparable market data exists in the general market area to develop a reliable sales comparison analysis for the subject property.

3. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware, have considered these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them, and have commented about the effect of the adverse conditions on the marketability of the subject property. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

4. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

5. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

6. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

7. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

8. I estimated the market value of the real property that is the subject of this report based on the sales comparison approach to value. I further certify that I considered the cost and income approaches to value, but, through mutual agreement with the client, did not develop them, unless I have noted otherwise in this report.

9. I performed this appraisal as a limited appraisal, subject to the Departure Provision of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in the place as of the effective date of the appraisal (unless I have otherwise indicated in this report that the appraisal is a complete appraisal, in which case, the Departure Provision does not apply).

10. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value. The exposure time associated with the estimate of market value for the subject property is consistent with the marketing time noted in the Neighborhood section of this report. The marketing period concluded for the subject property at the estimated market value is also consistent with the marketing time noted in the Neighborhood section.

11. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. I further certify that no one provided significant professional assistance to me in the development of this appraisal.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certified and agrees that: I directly supervise the appraiser who prepared the appraisal report, have examined the appraisal report for compliance with the Uniform Standards of Professional Appraisal Practice, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 5 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): |
|---|---|
| Signature: | Signature: |
| Name: OMAR GUTIERREZ | Name: |
| Company Name: TITAN APPRAISALS | Company Name: |
| Company Address: 4724 GOLDEN RIDGE DR | Company Address: |
| CORONA, CA 92880 | |
| Date of Report/Signature: 10/06/2010 | Date of Report/Signature: |
| State Certification #: | State Certification #: |
| or State License #: AL018208 | or State License #: |
| State: CA | State: |
| Expiration Date of Certification or License: 10/02/2011 | Expiration Date of Certification or License: |

ADDRESS OF PROPERTY APPRAISED:
7468 ADDISON ROAD
RANCHO CUCAMONGA, CA  91730

APPRAISED VALUE OF THE SUBJECT PROPERTY $   340,000
EFFECTIVE DATE OF APPRAISAL/INSPECTION  10/06/2010

LENDER/CLIENT:
Name:
Company Name:                         ACKERSON
Company Address:         7468 ADDISON RD, RANCHO CUCAMONGA, CA 91730

SUPERVISORY APPRAISER:
SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
☐ Did inspect interior and exterior of subject property
COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street

10CH:          PAGE 3 OF 3          Fannie Mae Form 2055 9-96
Produced using ACI software. 800.234.8727 www.aciweb.com
Omar Gutierrez

**FannieMae**

## Desktop Underwriter Quantitative Analysis Appraisal Report

File No.: ACKERSONRCUC2055-

| FEATURE | SUBJECT | SALE 4 | | SALE 5 | | SALE 6 | |
|---|---|---|---|---|---|---|---|
| Address | 7468 ADDISON ROAD RANCHO CUCAMONGA | 7616 SANDPIPER CT RANCHO CUCAMONGA | | 11844 ADAMS CT RANCHO CUCAMONGA | | | |
| Proximity to Subject | | 0.51 miles WSW | | 0.39 miles E | | | |
| Sales Price | $ N/A | $ 360,000 | | $ 339,900 | | $ | |
| Price/Gross Liv. Area | $ 0.00 ☑ | $ 183.96 ☑ | | $ 171.93 ☑ | | $ 0.00 ☑ | |
| Data & Verif. Sources | | MLS,NDC,R.LIST,PUB. RECS. | | MLS,NDC,R.LIST,PUB. RECS. | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sales or Financing Concessions | | FHA. 99% DOC.# 291135 | | 2% MRK. ADJ. LISTING | -7,000 | | |
| Date of Sale/Time | N/A | 07/20/2010 | | 07/31/2010 | | | |
| Location | SUBURBAN | SUBURBAN/SIM | | SUBURBAN/SIM | | | |
| Site | 4500 SQFT. | 5658 SQFT. | | 6615 SQFT. | -2,000 | | |
| View | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | | |
| Design (Style) | CONV./AVG | CONV./SIM | | CONV./SIM | | | |
| Actual Age (Yrs.) | 1989 | 1988 | | 2000 | | | |
| Condition | AVERAGE | SIMILAR | | SIMILAR | | | |
| Above Grade Room Count | Total 8 : Bdrms 4 : Baths 2.50 | Total 8 : Bdrms 4 : Baths 2.50 | | Total 7 : Bdrms 3 : Baths 2.50 | +4,000 | Total : Bdrms : Baths | |
| Gross Living Area | 1,925 Sq. Ft. | 1,957 Sq. Ft. | 0 | 1,977 Sq. Ft. | 0 | Sq. Ft. | |
| Basement and Finished | NONE | NONE | | NONE | | | |
| Rooms Below Grade | DOM=N/A | DOM=68 | | DOM=67 | | | |
| Garage/Carport | 2-CAR GARAGE | 2-CAR GARAGE | | 2-CAR GARAGE | | | |
| AMENITIES: | CVPOR,CVPAT | SUPERIOR | -3,000 | SIMILAR | | | |
| OTHER: | F/P,B/INS | SIMILAR | | SIMILAR | | | |
| Net Adj. (total) | | ☐ + ☒ - $ 3,000 | | ☐ + ☒ - $ 5,000 | | ☒ + ☐ - $ 0 | |
| Adjusted Sales Price of Comparables | | Gross: 0.8% Net: -0.8% $ 357,000 | | Gross: 3.8% Net: -1.5% $ 334,900 | | Gross: 0.0% Net: 0.0% $ 0 | |
| Date of Prior Sales | 04/15/2005 | 04/08/2010 | | 04/19/2010 | | | |
| Price of Prior Sales | $ 479,000 | $ 291,600 | | $ 381,503 | | $ | |

SEE ATTACHED ADDENDUM.

| Borrower: ACKERSON | | | ADDENDUM | | File No.: ACKERSONRCUC2055-10 |
|---|---|---|---|---|---|
| Property Address: 7468 ADDISON ROAD | | | | Case No.: | |
| City: RANCHO CUCAMONGA | | | | State: CA | Zip: 91730 |
| Lender: ACKERSON | | | | | |

**Neighborhood Boundaries**
SUBJECT NEIGHBORHOOD IS BORDERED BY STATE ROUTE 210 FWY TO THE NORTH, SAN BERNARDINO FWY (10) TO THE SOUTH, ARCHIBALD AVE TO THE WEST AND 15-FWY TO THE EAST. SUBJECT IS NOT LOCATED IN A FLOOD ZONE, FLOOD ZONE IS "X", PANEL #060671-8635H, MAP DATE IS 08/28/2008.

**Analysis of Current Agreements**
SUBJECT PROPERTY HAS NOT BEEN LISTED WITHIN THE PAST 12-MONTHS PER SO.CAL.MLS AND IS CURRENTLY NOT UNDER ANY OPTION FOR PURCHASE.

**Summary of Market Data**
SALES COMPARISON ANALYSIS BRACKETS BETWEEN $328,000 AND $357,000. THEREBY SUPPORTING AN ESTIMATED VALUE OF $340,000.

GROSS LIVING AREA ADJUSTED AT $40 PER SQUARE FEET DIFFERENCE.
BEDROOMS ADJUSTED AT $4,000.
BATHROOMS ADJUSTED AT $1,500 PER 1/2-BATH AND $3,000 FOR A FULL BATHROOM DIFFERENCE.
GARAGE ADJUSTED AT $2,500 PER GARAGE SPACE.

COMP. #5 IS A LISTING AND WAS ADJUSTED A NEGATIVE 2% OFF ITS RESPECTIVE LISTING PRICE IN ORDER TO REFLECT A MORE REALISTIC SALES PRICE. ADJUSTMENT BASED ON SALE TO LIST PRICE RATIO ALONG WITH ADJUSTMENT FOR CONTRACT NEGOTIATIONS.

ALL OTHER ADJUSTMENTS BASED UPON BOTH MARKET REACTION AND COST DERIVED FROM THE MARSHALL AND SWIFT RESIDENTIAL COST HANDBOOK.

ALL SALES VERIFIED THROUGH PUBLIC RECORDS.

SALES ANALYSIS BEST REFLECTS THE FLUCTUATIONS OF THE MARKETPLACE & THE INTERACTION BETWEEN TYPICALLY INFORMED BUYERS AND SELLERS. THIS APPRAISAL REPORT IS IN CONFORMITY TO USPAP. THIS REPORT IS BASED ON AN EXTERIOR/INTERIOR INSPECTION.

**Additional Comments**
**PURPPOSE AND FUNCTION OF THE APPRAISAL**

THE PURPOSE OF THE APPRAISAL IS TO FORM AN OPINION OF VALUE OF THE FEE SIMPLE INTEREST IN THE SUBJECT PROPERTY AS OF THE EFFECTIVE DATE OF THE APPRAISAL. THE INTENDED USER OF THIS APPRAISAL REPORT IS THE CLIENT. THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL FOR PERSONAL EVALUATION, SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THIS APPRAISAL REPORT FORM, AND DEFINITION OF MARKET VALUE. NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER.

FLOORPLAN

| Borrower: | ACKERSON | | File No.: | ACKERSONRCUC2055-10 |
| Property Address: | 7468 ADDISON ROAD | | Case No.: | |
| City: | RANCHO CUCAMONGA | State: | CA | Zip: | 91730 |
| Lender: | ACKERSON | | | |



| AREA CALCULATIONS SUMMARY | | | |
| Code | Description | Size | Net Totals |
| GLA1 | First Floor | 938.57 | 938.57 |
| GLA2 | Second Floor | 986.00 | 986.00 |
| P/P | Covered Porch | 49.00 | |
| | Covered Patio | 154.00 | 203.00 |
| GAR | Garage | 447.00 | 447.00 |
| | **TOTAL LIVABLE** (rounded) | | **1925** |

| LIVING AREA BREAKDOWN | | | |
| Breakdown | | | Subtotals |
| First Floor | | | |
| | 3.0 x | 21.0 | 63.00 |
| | 24.5 x | 31.0 | 759.50 |
| | 2.0 x | 6.5 | 13.05 |
| 0.5 x | 2.0 x | 2.0 | 2.04 |
| 0.5 x | 2.0 x | 2.0 | 1.98 |
| | 5.5 x | 18.0 | 99.00 |
| Second Floor | | | |
| | 4.0 x | 52.0 | 208.00 |
| | 7.0 x | 16.0 | 112.00 |
| | 11.0 x | 16.0 | 176.00 |
| | 10.0 x | 49.0 | 490.00 |
| 10 Calculations Total (rounded) | | | 1925 |

PLAT MAP

| Borrower: | ACKERSON | | File No.: | ACKERSONRCUC2055-10 |
| Property Address: | 7468 ADDISON ROAD | | Case No.: | |
| City: | RANCHO CUCAMONGA | State: | CA | Zip: | 91730 |
| Lender: | | ACKERSON | | |



LOCATION MAP

| Borrower: | ACKERSON | | File No.: | ACKERSONRCUC2055-10 |
| Property Address: | 7468 ADDISON ROAD | | Case No.: | |
| City: | RANCHO CUCAMONGA | State: | CA | Zip: | 91730 |
| Lender: | ACKERSON | | | |



4724 GOLDEN RIDGE DR, CORONA, CA 92880 -- 562.522.3419

| Borrower: | | | | | |
| --- | --- | --- | --- | --- | --- |
| | | | File No.: | ACKERSONRCUC2055-10 | |
| Property Address: | 7468 ADDISON ROAD | | Case No.: | | |
| City: | RANCHO CUCAMONGA | State: | CA | Zip: | 91730 |
| Lender: | ACKERSON | | | | |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: October 6, 2010
Appraised Value: $ 340,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

| Borrower: | ACKERSON | | File No.: | ACKERSONRCUC2055-10 |
|---|---|---|---|---|
| Property Address: | 7468 ADDISON ROAD | | Case No.: | |
| City: | RANCHO CUCAMONGA | State: | CA | Zip: | 91730 |
| Lender: | ACKERSON | | | |



ADDITIONAL STREET SCENE



WEST SIDE OF SUBJECT



WEST SIDE OF SUBJECT

| Borrower: | | | | | | File No.: | ACKERSONRCUC2055-10 |
|---|---|---|---|---|---|---|---|
| Property Address: | 7468 ADDISON ROAD | | | | | Case No.: | |
| City: | RANCHO CUCAMONGA | | State: | CA | Zip: | 91730 |
| Lender: | | ACKERSON | | | | | |



**COMPARABLE SALE #1**

11852 MANHATTAN CT
RANCHO CUCAMONGA
Sale Date: 08/31/2010
Sale Price: $ 328,000



**COMPARABLE SALE #2**

7532 SMALLWOOD PL
RANCHO CUCAMONGA
Sale Date: 07/27/2010
Sale Price: $ 333,000



**COMPARABLE SALE #3**

7376 EL DORADO CT
RANCHO CUCAMONGA
Sale Date: 09/17/2010
Sale Price: $ 338,000

| Borrower: | | | | | |
|---|---|---|---|---|---|
| Property Address: | 7468 ADDISON ROAD | | | | File No.: ACKERSONRCUC2055-10 |
| City: | RANCHO CUCAMONGA | State: | CA | Zip: | 91730 |
| Lender: | ACKERSON | | | | |



**COMPARABLE SALE #4**

7616 SANDPIPER CT
RANCHO CUCAMONGA
Sale Date: 07/20/2010
Sale Price: $ 360,000



**COMPARABLE SALE #5**

11844 ADAMS CT
RANCHO CUCAMONGA
Sale Date: 07/31/2010
Sale Price: $ 339,900

**COMPARABLE SALE #6**

Sale Date:
Sale Price: $

# EXHIBIT "4"

| Borrower: | ACKERSON | | File No.: | ACKERSONRCUC2055-10 |
| Property Address: | 7468 ADDISON ROAD | | Case No.: | |
| City: | RANCHO CUCAMONGA | State: CA | Zip: | 91730 |
| Lender: | ACKERSON | | | |

### DECLARATION OF OMAR GUTIERREZ

I, **OMAR GUTIERREZ**, declare as follows:

I am a real estate appraiser, State of California license number
__AL018208__ . I was hired by the ___Ackerson's___ ("Debtors").

I make this declaration based upon my personal and firsthand
knowledge, my education, training and experience in the field of real
estate appraisal and if called as a witness, I could and would
competently and truthfully testify under oath thereto. I have held a
Residential State license since _1993_ . I have been doing appraisals
since __1993__ . I perform approximately 20 to 40 residential appraisals
per month.

On or about _October 6th, 2010_, I had occasion to conduct an
appraisal of the Real Property. Attached hereto and incorporated by
reference herein as **Exhibit "3"** is a true and correct copy of the
_Ackerson property__ , _2010_ appraisal report. In preparing this on-
site appraisal report, I performed market research, inspected the
residence, both interior and exterior, measured the Residence to
determine the square footage, and surveyed the immediate neighborhood.
In determining the fair market value of the Real Property, I used both
the sales comparison approach and the cost approach, with the greater
weight given to the sales comparison approach. I consider the sales
approach to be the most reliable in determining the fair market value
because it more accurately simulates buyers' perceptions and actions.
Based upon my observations, inspection of the subject property, and
market research as well as my training, education and experience as a
residential appraiser, it is my professional opinion that the Real

DECLARATION (PAGE 2 OF 2)

| Borrower: | ACKERSON | | File No.: | ACKERSONRCUC2055-10 |
|---|---|---|---|---|
| Property Address: | 7468 ADDISON ROAD | | Case No.: | |
| City: | RANCHO CUCAMONGA | State: CA | Zip: | 91730 |
| Lender: | ACKERSON | | | |

Property has a fair market value of $ 340,000 as of October 6th, 2010. I have no present or contemplated future interest in the Real Property described in the appraisal report attached hereto as **Exhibit "3"**. Neither my employment or compensation for this appraisal is contingent upon the value found. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and complete to the best of my knowledge. Executed at Corona, California on this 6th day of Octorber 2010.

OMAR GUTIERREZ, Appraiser

# EXHIBIT "5"

## DECLARATION OF SHEILA H. ACKERSON

**I, Sheila H. Ackerson,** declare as follows:

1.  I am an individual debtor in the herein Chapter 13 Bankruptcy, case number 6:10-bk-46364-MJ. I have personal knowledge of the facts stated in this declaration and could and would testify under oath thereto if called as a witness.

2.  I filed this case on November 9, 2009.

3.  I am the owner of real property located at 7468 Addison Road, Rancho Cucamonga, CA 91730, County of San Bernardino, Lot:018, Tract:13304 (the "Real Property").

4.  I live on the Real Property.

5.  The first mortgage on the Real Property is held by Wells Fargo Bank, N.A. (America's Servicing Company as servicer), secured by a first deed of trust; it had a total payoff balance of $441,365.40 as of the date of filing.  A true and correct copy of America's Servicing Company's mortgage statement is attached hereto and is incorporated by reference as **Exhibit "1"**.

6.  The second mortgage on the Real Property is held by PNC Bank, N.A. (National City Bank as predecessor in interest), secured by a first deed of trust; it had a total payoff balance of $53,689.00 as of the date of PNC Bank, N.A.'s proof of claim is attached hereto and is incorporated by reference as **Exhibit "2"**.

1    I declare under penalty of perjury under the laws of the United

2 States of America that the foregoing is true and complete to the best

3 of my knowledge.  Executed at Riverside, California on this 2nd day of

4 January 2014.

5

6    

7

8                                          Sheila H. Ackerson

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Winterbotham Parham Teeple, A PC

4371 Latham Street, Suite #105,  Riverside, CA 92501

A true and correct copy of the foregoing document described as **DEBTOR'S NOTICE OF MOTION AND MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506(d)] AND**_____ _____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Order(s) and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On ___1│3│14_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) stated below:

Rod (TD) Danielson
Notice-efile@rodan13.com

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL OR OVERNIGHT MAIL (state method for each person or entity served)**: On ___1│3│14_____, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ___1│3│14_____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

HONORABLE MEREDITH JURY - PERSONAL SERVICE

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: _1│3│14_____          Signature: _____

Printed Name: _Dawn Haugland_____

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2011                            Page 6                            **F 4003-2.4.MOTION**

**2. SERVED BY UNITED STATES MAIL, CERTIFIED MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):

*(Attached page to Proof of Service of Document-please include any additional or alternative addresses and attach additional pages if needed)*
*(Certified Mail required for service on a national bank.)*

| | Address from: | Delivery Method |
|---|---|---|
| 1st lienholder *(name and address)*<br>Wells Fargo Bank, N.A.<br>Attn: President, CEO<br>101 N. Phillips Avenue<br>Sioux Falls, SD 57104 | ☐ Proof of claim ☐ Secretary of State<br>☑ FDIC website ☐ Other *(specify)*: | ☐ United States mail<br>☑ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>Carrier Name:<br>7012 2210 0002 6602 7998 |
| 1st lienholder *(name)* and Agent for Service of Process *(name and address)*<br>Household Finance Corporation of California<br>PO BOX 829009<br>Dallas, TX 75382 | ☑ Proof of claim ☐ Secretary of State<br>☐ FDIC website ☐ Other *(specify)*: | ☐ United States mail<br>☑ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>Carrier Name:<br>7012 2210 0002 6602 8001 |
| 1st lienholder *(name)* and Servicing Agent *(name and address)* | ☐ Proof of claim ☐ Secretary of State<br>☐ FDIC website ☐ Other *(specify)*: | ☐ United States mail<br>☐ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>Carrier Name: |
| 2nd lienholder *(name and address)*<br>PNC Bank, N.A.<br>Attn: President, CEO<br>222 Delaware Avenue<br>Wilmington, DE 19899 | ☐ Proof of claim ☐ Secretary of State<br>☑ FDIC website ☐ Other *(specify)*: | ☐ United States mail<br>☑ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>Carrier Name:<br>7012 2210 0002 6602 8018 |
| 2nd lienholder *(name)* and Agent for Service of Process *(name and address)*<br>PNC Bank<br>PO BOX 94982<br>Cleveland, OH 44101 | ☑ Proof of claim ☐ Secretary of State<br>☐ FDIC website ☐ Other *(specify)*: | ☐ United States mail<br>☑ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>Carrier Name:<br>7012 2210 0002 6602 8025 |
| 2nd lienholder *(name)* and Servicing Agent *(name and address)* | ☐ Proof of claim ☐ Secretary of State<br>☐ FDIC website ☐ Other *(specify)*: | ☐ United States mail<br>☐ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>Carrier Name: |

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2011      Page 7      F 4003-2.4.MOTION

| 3rd lienholder (name and address) | Address from:<br>☐ Proof of claim<br>☐ FDIC website | Delivery Method<br>☐ United States mail<br>☑ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>Carrier Name: |
| 3rdd lienholder (name) and Agent for Service of Process (name and address) | Address from:<br>☐ Proof of claim<br>☐ FDIC website | Delivery Method<br>☐ United States mail<br>☐ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>Carrier Name: |
| 3rd lienholder (name) and Servicing Agent (name and address) | Address from:<br>☐ Proof of claim<br>☐ FDIC website | Delivery Method<br>☐ United States mail<br>☐ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>Carrier Name: |

| Alternative/additional address *(name and address)*<br>FDIC<br>c/o Sheila Bair<br>550 17th St. N.W.<br>Room MB-6098<br>Washington, D.C. 20429 | Address from:<br>☐ Proof of claim  ☐ Secretary of State<br>☑ FDIC website  ☐ Other *(specify)*: | Delivery Method<br>☐ United States mail<br>☑ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>Carrier Name:<br><br>7012 2210 0002 6602<br>8032 |
| Alternative/additional address *(name and address)* | Address from:<br>☐ Proof of claim  ☐ Secretary of State<br>☐ FDIC website  ☐ Other *(specify)*: | Delivery Method<br>☐ United States mail<br>☐ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>Carrier Name: |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2011*                                  Page 8                                  **F 4003-2.4.MOTION**